IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

James W. Long,                    )
                                  )
        Plaintiff,                )
                                  )
            v.                    )    1:12cv787 (JCC/TCB)
                                  )
Teradata Corporation, et al.,     )
                                  )
                                  )
        Defendants.               )


**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the Motions to
Dismiss filed by Defendant Janet Y. Hong [Dkt.5] and by
Defendants Teradata Corporation, Michael Owellen, and Robert
Trenkamp [Dkt. 8] (collectively "Defendants").  For the
following reasons, the Court will grant Defendants' Motions.

**I. Background**

**A. Factual Background**

Plaintiff James Long is an African-American male who
was an employee of V-Soft Consulting Group ("V-Soft"), a non-
party. (Compl. ¶ 3.)  Through his employment with V-Soft, Long
was placed onsite at one of V-Soft's clients, Teradata, in order
to help Teradata service a government contract held by Advanced
Technology Services Corporation ("ATSC"), one of Teradata's
clients. (*Id.* ¶ 16, 18.)  Although Plaintiff alleges that he

1

was a "de facto" employee of Teradata (*id.* ¶ 27), he also admits that he was employed by V-Soft during the period he performed services for Teradata.  (*Id.* ¶ 18.)

During Long's time assisting Teradata with the ATSC contract, Long's immediate supervisor was Defendant Michael Owellen, a Teradata employee. Owellen reported to another Teradata employee, Defendant Robert Trekamp.  (*Id.* ¶ 28.)  In addition, Long worked with Defendant Janet Hong, who was an independent contractor of Teradata.  (*Id.* ¶ 11, 29.)  On or about March 15, 2011, Hong raised a sexual harassment claim against Long.  (*Id.* ¶ 31.)  Long alleges that that this claim was false and that Hong had conspired with Owellen to bring this claim against Long because of his race.  (*Id.*)  Long also asserts, without providing any details or specifics, that Hong had made previous unsubstantiated sexual harassment claims against minority males with whom she had worked.  (*Id.* ¶ 32.)[1] Owellen proceeded to inform his immediate supervisor, Trekamp, of Hong's sexual harassment allegations against Long.  (*Id.* ¶ 32.)[2]  Trenkamp and Owellen then reported this allegation to Teradata's Human Resources department and a number of unidentified Teradata Resources, stating that Long was to be terminated for sexual harassment and substandard work. (*Id.*)

---

[1] The Complaint contains two paragraphs numbered 32.  This allegation is located in the first paragraph numbered 32.
[2] This allegation is located in the second paragraph numbered 32.

Trenkamp and Owellen conveyed the same information to ATSC's Human Resources department and unidentified ATSC employees. (*Id.* ¶ 33.)

A few days later, on or about March 18, 2011, Long noticed a "marked change" in workplace environment, observing that Hong refused to work with him and his coworkers avoided speaking with him. (*Id.* ¶ 35.) On or about April 1, 2011, Owellen informed Long that he was being terminated from the project for three reasons: (1) his work was substandard; (2) Long had spoken with Teradata's client concerning Teradata's internal matters; and (3) Long had sexually harassed Hong on several occasions. (*Id.* ¶ 36.) Owellen had Long remove his personal effects, took Long's badge, and escorted him from the building. (*Id.* ¶ 37.) On that same day, another Teradata employee, Richard Smith, emailed V-Soft and stated that Teradata had removed Long from his assignment there "due to concerns regarding conduct." (Exh. A, Def. Teradata, Owellen, and Trenkamp's Mem. [Dkt. 9]; *see also* Compl. ¶ 38.)[3]

On or about April 7, 2011, the Human Resources Department at V-Soft informed Long: (1) that Teradata had reported that a claim of sexual harassment against him, (2) that pending an investigation of this claim, he was suspended without

---

[3] Long does not attach this email to his Complaint. The Court may consider such extraneous material, however, because the email is "integral and explicitly relied on in the complaint." *Phillips v. LCI Int'l*, 190 F.3d 609, 618 (4th Cir. 1999).

pay and would not be assigned any further projects, and (3) that his assignment with Teradata was terminated. (Compl. ¶ 39.) On August 12, 2011, Teradata responded by letter to an inquiry from Long's attorney. Long alleges that the letter "denied that Plaintiff was terminated for substandard work, communication with the client ATSC, or most importantly sexual harassment stating, 'there is no reference or suggestion of sexual harassment by Mr. Long.'" (*Id.* ¶ 40.) The letter, however, only states that Plaintiff was an employee of V-Soft, not Teradata or Claraview; that the purchase order for his services ended on March 27, 2011; that Claraview had decided not to renew the purchase order; and that Richard Smith's April 1, 2011 email to V-Soft "makes no reference or suggestion of sexual harassment by Mr. Long." (*See* (Exh. B, Def. Teradata, Owellen, and Trenkamp's Mem. [Dkt. 9].[4])

Long also alleges that around April 12, 2011, Teradata began interviewing persons for his prior position who possessed less qualifications and security certifications than him and who were not members of a protected class. (Compl. ¶ 42.)

On or about May 31, 2011, V-Soft ended its investigation into the sexual harassment claim against Long, informing him that it could find no evidence in support of the

---

[4] Again, the Court may consider the letter in analyzing Defendants' motion to dismiss because Long cites and relies on the letter in support of his allegations despite not attaching it to his Complaint. *Phillips*, 190 F.3d at 618.

harassment allegations.  (*Id.* ¶ 44.)  V-Soft indicated that its investigation was based solely on its interview with Long because Teradata had refused to participate in the investigation.  (*Id.*)  V-Soft subsequently has not provided Plaintiff with another new assignment and has stated that this is because it "thought he had quit." (*Id.* at ¶ 45.)  Although Long alleges that V-Soft "constructively terminated" him, V-Soft denies that it has terminated him.  (*Id.*)

Long currently is unemployed, despite interviewing with over 30 companies. (*Id.* ¶ 47.)  He alleges that there has been irreparable harm to his professional reputation, his employment prospects, and his ability to obtain further security clearances.  (*Id.*)  As a result of his allegedly resulting emotion distress, Long has anorexia, hypertension, anxiety, alopecia, and "stress related insomnia with endogenous depression." (*Id.* ¶¶ 47, 67.)

### B. Procedural Background

On May 26, 2011, Long filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination under Title VII.  On June 21, 2011, the EEOC issued a "right-to-sue letter" which provided that Long must file suit in federal or state court "within 90 days" of receipt of the letter.  Compl. ¶ 13; Exhibit A to Compl.  Long originally filed suit in the United States District

Court for the District of Columbia on August 5, 2011.  Compl. ¶ 13; Exhibit B to Compl.  On January 12, 2012, that court dismissed Long's case without prejudice for lack of personal jurisdiction.  *Id.*

Long subsequently filed suit in this Court on July 16, 2012.  [Dkt. 1.]  The Complaint contains six counts: (1) racial discrimination under Title VII against only Defendant Teradata(Count I); (2) racial discrimination under 42 U.S.C. § 1981 against only Defendants Teradata, Owellen, and Trenkamp (Count II); tortious inference with an existing contract (Count IV); common law conspiracy (Count V); and intentional infliction of emotional distress ("IIED") (Count VI).  Defendant Hong and Defendants Teradata, Owellen, and Trenkamp filed Motions to Dismiss on August 10, 2012.  [Dkts. 5, 8.]  Long filed two opposition briefs on August 20, 2012.  [Dkts. 12, 13.] Defendants Teradata, Owellen, and Trenkamp filed their reply brief on August 27, 2012.  [Dkt. 14.]  Defendant Hong filed her reply brief one day late on August 28, 2012.  [Dkt. 15.]

On August 30, 2012, Plaintiff filed a Motion to Strike Defendant Janet Hong's Reply Brief to Plaintiff's Opposition to Motion to Dismiss (the "Motion to Strike").  [Dkt. 16.] Defendant Hong filed an opposition brief on August 31, 2012. [Dkt. 19.]  Hong also filed a Motion for Extension of Time to File Reply to Opposition to Motion to Dismiss (the "Motion for

Extension of Time"). [Dkt. 17.] On September 5, 2012, Hong filed a supplemental memorandum in support of her Motion for Extension of Time, stipulating that plaintiff had agreed to deem Hong's reply as timely filed. [Dkt. 20.]

Defendants' Motions to Dismiss are before the Court.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

7

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  Moreover, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

### III.    Analysis

#### A. Count I: Title VII

In Count I, Long brings a claim for racial discrimination under Title VII.  (Compl. ¶¶ 24-48.)  In the September 7, 2012 hearing on the Motions to Dismiss, Plaintiff admitted that Count I should be dismissed as time-barred in its entirety.  Count I therefore is dismissed with prejudice against Defendants Hong, Teradata, Owellen and Trenkamp.

#### B. Count II: Section 1981

In Count II, Long brings a claim of racial discrimination under 42 U.S.C. § 1981.  (Compl. ¶¶ 49-52.)  In so far as this claim is brought against Hong, based on Long's agreement in the September 7, 2012 hearing, Count II is dismissed against Hong.[5]  Long continues to assert Count II, however, against Teradata, Owellen, and Trenkamp.  These defendants argue that this count should be dismissed for failure to state a claim.  The Court agrees.

In order to state a claim for racial discrimination under § 1981, a plaintiff must allege three things: (1) "that he is a member of a racial minority; (2) "that the defendants' termination of his employment was *because of his race;*" and (3) "that their discrimination was intentional."  *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 345 (4th Cir. 2006) (emphasis in original).  Defendants challenge the sufficiency of the pleadings on the second point, that Defendants took the alleged actions because Long was an African American.

Long fails to factually support his conclusory allegations that Defendants undertook their various actions— including Trenkamp and Owellen reporting Hong's sexual harassment claim against Long to Human Resources, their

---

[5] Although Defendant Hong raises arguments about the dismissal of Count II against her (*See* Hong's Mem. [Dkt. 6] at 7-9), Plaintiff concedes in his opposition that he is not bringing this claim against Hong.  (Pl. Opp. to Hong [Dkt. 12] at 2.).  In the September 7, 2012 hearing on the Motions, Plaintiff again admitted this.

termination of Long, and their statement that Long's termination was due to the sexual harassment claim and poor work product—because Long was African American.   Long asserts that this conduct was "on the basis of race," "because he was Black," was "racially motivated," or was undertaken as a "pretext for discrimination." (Compl. ¶¶ 31, 32, 34, 46.).   However, when analyzing a complaint for the purposes for a Rule 12(b)(6), the Court is not obligated to accept such legal conclusions as true. *Jordan*, 458 F.3d at 345.   In addition, Long argues that because he was employed at-will and could be terminated for no reason, the therefore "unnecessary" rationales for his termination (Hong's sexual harassment claim against Long and Long's supposed shoddy work) proffered by Defendants must be "pretextual and purposed solely to cast aspersions against Plaintiff." (Pl. Opp. to Teradata, Owellen, and Trenkamp [Dkt. 13] at 15.)   While it is possible that the stated reasons for Long's termination were a pretext for racial discrimination, it is also possible that they were Defendants' real reasons.   Without additional facts to support his assertion that Defendants' conduct was racially motivated, Long fails to allege any more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-79.   Such allegations do not to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and therefore currently are insufficient to allow the Court "to draw a

reasonable inference" that Defendants discriminated against Long *because* of his race.  *Iqbal*, 556 U.S. at 678, 679.

Accordingly, Count II is dismissed without prejudice.

### C. Count VI: Intentional Infliction of Emotional Distress

In Count VI, Long alleges a state law claim for IIED.[6] (Compl. ¶¶ 49-52.)  In order to state a claim for IIED under Virginia law, a plaintiff must allege sufficiently that "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe." *Ainsworth v. Loudon County Sch. Bd.*, 851 F. Supp. 2d 963, at *14 (E.D. Va. 2012).  Although a plaintiff in Virginia state court must plead the facts supporting these elements of a Virginia IIED claim "with the requisite degree of specificity," the Fourth Circuit has held that normal federal pleading rules apply to such claims when they are brought in federal court.  *See Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005).  Defendants argue that that Long fails to allege plausibly the second and fourth elements of an IIED claim.

---

[6] The remaining four counts are state-law claims.  As the Court's jurisdiction over these claims is based upon diversity (*see* Compl. ¶ 1), the Court applies Virginia substantive law to these claims. *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1416 (4th Cir. 1992) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

First, in order to constitute sufficiently "outrageous or intolerable" conduct, a defendant's actions must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E. 2d 160, 162 (Va.1991). This standard is "exceptionally difficult to prove in the employment context where multiple courts have rejected its assertion." *See e.g. Ortiz v. Panera Bread*, No. 1:10cv1424, 2011 WL 3353432, at *6 (E.D. Va. Aug. 2, 2011) (collecting cases).

Plaintiff's allegations cannot meet this high standard. In essence, the allegations of outrageous conduct consist of Long's assertion that Defendants racially discriminated against him by formulating Hong's sexual harassment claim and by publicizing this claim and Long's subsequently resulting termination because of it. (Compl. ¶ 66.) For the reasons discussed in section III.B of this opinion, the Court has determined that Long has failed to sufficiently allege such assertions of racial discrimination. Moreover, it is well-settled in Virginia that allegations of discrimination do "not rise to the level of outrageousness required" necessary to state an IIED claim. *Karpel v. Inova Health Sys. Servs.*, Inc., No. 96-347-A, 1997 WL 38137, at *7 (E.D. Va. Jan.27, 1997) (collecting cases). As a result, even

12

if Long had pled his allegations of racial discrimination sufficiently, this would not be enough to plead outrageous conduct for purposes of his IIED claim.

Second, in order for a plaintiff to sufficiently allege the severity of any mental or emotional distress, the distress inflicted must be "extreme" and "so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E. 2d. at 163.  Long alleges that as a result of Defendants' conduct, he "has suffered ongoing anorexia, alopecia, accelerated hypertension, and stress related insomnia with endogenous depression." (Compl. ¶ 67.)  Courts in Virginia have held that alleged symptoms of nervousness, the inability to sleep, and stress and its related physical symptoms do not sufficiently support pleading the requisite severity of distress.  *See Ortiz*, 2011 WL 3353432, at *7.  Long's alleged symptoms fall into the category of stress and stress-related physical symptoms.  Indeed, Long concedes that the physical ailments that he alleges are "all known to be clinical manifestations of stress." (Pl. Opp. to Teradata, Owellen, and Trenkamp [Dkt. 13] at 20.)  Thus, these alleged physical symptoms are insufficient.

Relying on *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 269 (4th Cir. 2001), Long also points to his assertion that Defendants' conduct resulted in interference with

13

his work and his employment prospects. (Compl. ¶ 67.) Long, however, misconstrues the Fourth Circuit's meaning in *Barrett*. To plead "severe" emotion distress, it is not sufficient merely to allege that a defendant's conduct interfered with a plaintiff's work or outside activities. *Barrett*, 240 F.3d at 269. Rather, a plaintiff must allege that the *emotion distress* itself resulting from a defendant's conduct was so severe as to "render[s] her functionally incapable of carrying out any of her work." *Almy v. Grisham*, 639 S.E. 2d 182, 188 (Va. 2007). Long does not set out allegations asserting this. As a result, Long also has failed to state an IIED claim because he insufficiently has pled the severity of his distress.

As Long's allegations do not plausibly support the inference that Defendants' conduct was "outrageous" and that Long's resulting emotion distress was "severe," Count VI is dismissed without prejudice.

### D. Count IV: Common Law Conspiracy

In Count VI, Long brings a state claim for "common law conspiracy" against all of the Defendants. (Compl. ¶¶ 56-59.) Under Virginia law, the elements of a common law civil conspiracy claim are (1) an agreement between two or more persons" (2) "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means," which (3) "results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694,

14

703 (E.D. Va. 2007) (citing *Glass v. Glass*, 321 S.E. 2d 69 (Va. 1984). In addition, such a claim "generally requires proof that the underlying tort was committed." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 311 (4th Cir. 2012) (quoting *Almy*, 639 S.E. 2d at 189). As a result, if the Court dismisses the plaintiff's claim for the underlying actionable wrong for any reason, such as failure to state a claim, the Court must also dismiss the corresponding conspiracy claim. *Id.* Defendants argue that the Court should dismiss Long's common law civil conspiracy claim because Long has failed to pled any of alleged wrongs underlying the claim and because he has failed to adequately allege an "agreement" among the Defendants to engage in these wrongs.

In support of his claim, Plaintiff asserts that Defendants "intentionally combined . . . in a concerted effort to knowingly discriminate against the Plaintiff on the basis of race by fabricating a claim of sexual harassment and poor work product by the Plaintiff" in order to "cause an adverse employment action against the Plaintiff because he was Black." (Compl. ¶ 56.) The alleged underlying wrong, therefore, is Defendants' supposed racial discrimination against Long. Since the Court has found that Long failed to state a claim for racial discrimination under Title VII or Section 1981, such an alleged

wrong cannot support Long's corresponding civil conspiracy claim.  Therefore, Count IV is dismissed without prejudice.

### E. Count V: Statutory Business Conspiracy

In Count V, Long brings a "statutory business conspiracy" claim under Va. Code §§18.2-499, *et seq.*, alleging that the Defendants formed a conspiracy to racially discriminate against Long which resulted in "irreparable damage to his professional reputation, irreparable damage to his business interests because the Plaintiff cannot secure and maintain security clearances necessary as a technical security expert and thereby cannot contract with parties" and "permanently damaged" his "ability to obtain security contracts as an independent contractor."  (Compl. ¶ 63.)

In the September 7, 2012 hearing on the Motions to Dismiss, Long admitted that Count V should be dismissed against all Defendants.  Count V therefore is dismissed against Defendants Hong, Teradata, Owellen and Trenkamp.

### F. Count III: Tortious Interference with Existing Contract

Finally, in Count III Long brings a tortious interference with contract claim against the Defendants, alleging that their conduct regarding Hong's sexual harassment claim and the other Defendants' subsequent actions in dealing with and reporting this claim resulted in Long's termination

from V-Soft.  (Compl. ¶ 53-55.)  Defendants assert that Long did

not plausibly assert that Defendants' actions constituted

"improper methods" or that these actions caused V-Soft to

terminate Long.

     In order to bring a tortious interference with

contract claim in Virginia, a plaintiff must allege "(i) the

existence of a valid contractual relationship or business

expectancy; (ii) knowledge of the relationship or expectancy on

the part of the interferer; (iii) intentional interference

inducing or causing a breach or termination of the relationship

or expectancy; and (iv) resultant damage to the party whose

relationship or expectancy has been disrupted." *Lewis-Gale*

*Medical Center, LLC v. Alldredge*, 710 S.E. 2d 716, 720 (Va.

2011).  If the plaintiff was employed at-will, the plaintiff

must allege an additional element, that "not only [was there] an

*intentional* interference that caused the termination of the at-

will contract, but also that the defendant employed *improper*

methods" to do so.  *Id.*  Defendants contest the sufficiency of

Long's allegations regarding two elements: (1) the use of

improper methods and (2) causation.

     Defendants argue that Long has failed to plausibly

allege that they used "improper methods" because Long has failed

to state a claim for all of the other causes of action in his

Complaint.  Defendants misunderstand the necessary showing of

17

improper methods.  In asserting that a defendant employed
improper methods to intentionally interfere with plaintiff's
contract relationship, a plaintiff "need not prove that "the
'improper methods' used were inherently illegal or tortious,"
but "only that the interference was intentional and improper
under the circumstances" of the particular case." *Id.* at 721
(citing *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 493 S.E.
2d 375, 379 (Va. 1997)).  It is true that improper methods may
include "those means that are illegal or independently tortious,
such as violations of statutes, regulations, or recognized
common-law rules," including "violence, threats or intimidation,
bribery, unfounded litigation, fraud, misrepresentation or
deceit, defamation, duress, undue influence, misuse of inside or
confidential information, or breach of a fiduciary
relationship." *Id.*  But improper methods also can include
actions "which are not themselves tortious or illegal," *Maximus*,
493 S.E. 2d at 379, "include[ing] violations of "an established
standard of a trade or profession," "unethical conduct," or
"[s]harp dealing, overreaching, or unfair competition."
*Alldredge*, 710 S.E. 2d at 721.

        In this case, Long alleges that Defendant Hong filed a
false sexual harassment claim against him and that Trenkamp and
Owellen violated Teradata's code of ethics in their handling of
the claim.  (Compl. ¶ 32-33.)  As discussed above, the Court has

18

concluded that such allegations are not sufficient to plead, for example, a racial discrimination claim because Long failed to plausibly allege that the Defendants' actions were racially motivated.  Nonetheless, although these allegations, "are not overt breaches of statute [or torts], they do fit into the broad category of improper methods under Virginia law" such as unethical conduct.  *Harrington v. Sprint Nextel Corp.*, No. 1:08-cv-336 (JCC), 2008 WL 2228524, at *7 (E.D. Va. May 29, 2008).  As a result, Long plausibly has alleged Defendants engaged in improper methods.

However, the Court finds that Long has failed to state a claim for tortious interference with contract because his allegations do not plausibly support his assertion that Defendants' actions caused his termination with V-Soft.  Long alleges that "a direct result" of Defendants' actions relating to Hong's sexual harassment claim was the "termination of the contractual relationship between Mr. Long and V-Soft Consulting."  (Compl. ¶ 54).  Despite Long's "conclusory statement . . . [that the] defendants intentionally interfered with Plaintiff's contract, thereby 'causing the breach' . . . Plaintiff pleads facts that directly contradict this allegation.  *Mansfield*, 2008 WL 1924029, at *5-6.  Long does allege that V-Soft initially suspended Long due to the sexual harassment claim and the company's resulting investigation into that claim.

(*Id.*)   However, Long also admits that V-Soft concluded that
there was "no evidence in support of a claim of sexual
harassment" and that V-Soft "clear[ed] the Plaintiff of the
sexual harassment claim." In fact, he even alleges that V-Soft
"den[ies] that they had terminated the Plaintiff" and that it
claims it "fail[ed] to locate another assignment for him ...
because 'they thought he had quit.'" (*Id.* ¶¶ 45, 54-55.)   Long
does not assert that these any of these statements by V-Soft are
false.   As a result, the Court finds that Long has failed to
plead sufficient facts establishing a causal link between
Defendants' alleged intentional interference and Long's supposed
termination by V-Soft.   Count III therefore is dismissed without
prejudice.

### IV.   Conclusion

For these reasons, the Court will grant Defendants'
Motions to Dismiss.

An appropriate Order will issue.

/s/

September 10, 2012                    James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE